UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HEADHUNTER LLC,<br><br>                 Plaintiff,<br>     v.<br><br>DOE 1, et al.,<br><br>                 Defendants. | CASE NO. C17-0987JLR<br><br>ORDER ON MOTION FOR DEFAULT AND MOTIONS FOR DEFAULT JUDGMENT |

## I.   INTRODUCTION

Before the court are Plaintiff Headhunter LLC's ("Headhunter") motion for default against Defendant Poulline-Jaun Castillo and motions for default judgment against Defendants Krystal Sawyer, Abram Zeliz, and LeRoy Mechkstroth (collectively, "Defaulting Defendants"). (Castillo Mot. (Dkt. # 66)); Sawyer Mot. (Dkt. # 69); Zeliz Mot. (Dkt. # 71); Mechkstroth Mot. (Dkt. # 73).) The court has considered the motions,

//

//

the relevant portions of the record, and the applicable law.[1]  Being fully advised,[2] the court denies the motion for entry of default without prejudice and grants in part and denies in part the motions for default judgment for the reasons set forth below.

## II.  BACKGROUND

### A.  Factual Background

Headhunter brought this copyright infringement case on June 30, 2017.  (*See* Compl. (Dkt. # 1).)  Headhunter originally asserted copyright infringement claims against 19 Doe defendants for unauthorized copying and distribution of Headhunter's film, *A Family Man*, by using "the BitTorrent file sharing protocol."[3]  (*Id.* ¶ 1; *see also* Am. Compl. (Dkt. # 12) ¶ 5 (alleging that Headhunter developed and produced *A Family Man* for theatrical release in July 2017).)  Headhunter initially identified the defendants only by the IP address from which they shared the film.  (*Id.* ¶¶ 10-11.)  After Headhunter filed its initial complaint, the court granted Headhunter leave to conduct limited discovery to identify the defendants using their IP addresses.  (7/10/17 Order (Dkt. # 8).)  On August 31, 2017, Headhunter filed an amended complaint identifying 15 defendants by name.  (*See* Am. Compl. ¶¶ 18-32.)

//

---

[1] No defendant responded to the motions.  (*See* Dkt.)

[2] Headhunter did not request oral argument (*see* Castillo Mot.; Sawyer Mot.; Zeliz Mot.; Mechkstroth Mot.), and the court determines that oral argument would not be helpful to its disposition of the motions, Local Rules W.D. Wash. LCR 7(b)(4).

[3] BitTorrent is a peer-to-peer ("P2P") file-sharing network that allows users to share small pieces of an initial, uploaded file until a complete file is downloaded by each user.  (*See* Compl. ¶ 12.)

Taking into consideration the unique identifier associated with a particular digital copy of *A Family Man* and the timeframe when the IP address associated with a named defendant accessed that unique identifier, Headhunter alleges that the defendants were part of a "swarm" of users that reproduced, distributed, and/or displayed the copyrighted work. (*Id.* ¶¶ 10, 12, 18-19, 25, 32-35.) Headhunter also explains the forensic methods by which it identified Defendants' infringing activity. (*Id.* ¶¶ 36-38.)

Ms. Castillo, who appears *pro se*, responded to Headhunter's complaint by filing a motion to dismiss (MTD (Dkt. # 36)), which the court denied (1/9/18 Order (Dkt. # 61)). Ms. Castillo has not subsequently answered Headhunter's amended complaint. (*See* Dkt.) On March 6, 2018, Headhunter gave Ms. Castillo written notice of its intention to move for default. (Lowe Decl. (Dkt. # 67) ¶ 2, Ex. A.)

Defaulting Defendants did not respond to Headhunter's complaint. (*See* Dkt.) The court therefore entered default against Defaulting Defendants. (11/9/17 Order (Dkt. # 51).)

Headhunter moves for entry of default against Ms. Castillo and for default judgment against Ms. Sawyer, Mr. Zeliz, and Mr. Mechkstroth. (*See* Castillo Mot.; Sawyer Mot.; Zeliz Mot.; Mechkstroth Mot.) The court now addresses those motions.

### III. ANALYSIS

**A. Motion for Entry of Default**

1. <u>Legal Standard</u>

Under Federal Rule of Civil Procedure 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that

failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Filing a motion to dismiss constitutes defending an action within the meaning of Rule 55(a). *Fid. Mortg. Corp. v. Seattle Times Co.*, 213 F.R.D. 573, 574 (W.D. Wash. 2003). And, even where a defendant's responsive pleading is untimely after the court denies the motion to dismiss, courts have denied entry of default because the defendant intends to defend the suit. *See, e.g.*, *Dow v. Jones*, 232 F. Supp. 2d 491, 494-95 (D. Md. 2002).

Local Civil Rule 55(a) further requires that "in the case of a defaulting party who has entered an appearance, the moving party must give the defaulting party written notice of the requesting party's intention to move for the entry of default at least fourteen days prior to filing its motion." Local Rules W.D. Wash. LCR 55(a).

2. Entry of Default Against Ms. Castillo

Headhunter moves for entry of default against Ms. Castillo. (*See* Castillo Mot.) But by moving to dismiss, Ms. Castillo demonstrated her intent to defend against the suit. (*See* MTD); Fed. R. Civ. P. 55(a). Thus, particularly in light of Ms. Castillo's *pro se* status, the court denies entry of default. *See United States v. Edwards*, No. 2:10-cv-098-EJL-CWL, 2011 WL 2441682, at *3 (D. Idaho June 14, 2011); *cf. New Milani Grp., Inc. v. Aslani*, No. CV 17-02791 SJO (PJWx), 2017 WL 8220225, at *2 (C.D. Cal. June 9, 2017) (stating that the court would set aside the entry of default because "in light of [the d]efendant's *pro se* status, there is no indication that [the d]efendant's failure to timely respond to the [c]omplaint was deliberate, willful, or made in bad faith"). However, in the interest of ensuring an expeditious resolution of the case,

the court directs Ms. Castillo to file an answer to Headhunter's amended complaint within 21 days of the date of this order. If she does not do so, Headhunter may renew its motion for entry of default.

**B.     Motions for Default Judgment**

　　1. Legal Standard

Entry of default judgment is within the court's sound discretion. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Because granting or denying relief is within the court's discretion, entry of default does not automatically entitle a plaintiff to a court-ordered judgment. *Id.* In exercising its discretion, the court considers seven factors (the "*Eitel* factors"): (1) the possibility of prejudice to the plaintiff if relief is denied; (2) the substantive merits of the plaintiff's claims; (3) the sufficiency of the claims raised in the complaint; (4) the sum of money at stake in relationship to the defendant's behavior; (5) the possibility of a dispute concerning material facts; (6) whether default was due to excusable neglect; and (7) the preference for decisions on the merits when reasonably possible. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

Upon a motion for default judgment, the court considers the plaintiff's well-pleaded factual allegations, except those related to damages, as admitted and sufficient to establish a defendant's liability. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977); *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). The court must ensure that the amount of damages is reasonable and demonstrated by the plaintiff's evidence. *See* Fed. R. Civ. P. 55(b); *LG Elecs., Inc. v. Advance Creative Comput. Corp.*, 212 F. Supp. 2d 1171, 1178 (N.D. Cal. 2002) ("[T]he

evident policy of [Rule 55(b)] is that even a defaulting party is entitled to have its opponent produce some evidence to support an award of damages."). And "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

2. Default Judgment Against Defaulting Defendants

Headhunter seeks default judgment and a permanent injunction against Defaulting Defendants. (*See, e.g.*, Sawyer Mot. at 2.)[4] Headhunter first argues that because its allegations are proven upon entry of default, it has established that Defaulting Defendants infringed its copyright. (*Id.*) Headhunter further contends that the court should enter default judgment because (1) it will otherwise be without a legal remedy, (2) it has demonstrated liability, (3) the amount at stake is modest, (4) Defaulting Defendants' failure to respond is not due to excusable neglect, and (5) it properly served Defaulting Defendants. (*Id.* at 3.) Headhunter acknowledges the preference for deciding cases on their merits but asserts that the preference alone does not preclude default judgment. (*Id.*) Headhunter requests permanent injunctive relief; increased statutory damages under 15 U.S.C. § 504(c)(2) based on Defaulting Defendants' willful conduct; and attorneys' fees and costs. (*Id.* at 3-7.)

//

//

---

[4] Headhunter filed virtually identical motions for default judgment for all three Defaulting Defendants. (*See generally* Sawyer Mot.; Zeliz Mot.; Mechkstroth Mot.) Accordingly, the court cites only the motion regarding Ms. Sawyer unless the motions materially differ.

The court first considers Defaulting Defendants' liability and the *Eitel* factors and then concludes that they favor granting default judgment. Therefore, the court next considers the amount of damages, fees, and costs to award Headhunter.

   *a. Liability*

The allegations in Headhunter's amended complaint establish Defaulting Defendants' liability for copyright infringement. To prove copyright infringement, Headhunter must demonstrate ownership of a valid copyright and that Defaulting Defendants copied "constituent elements of the work that are original." *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 846 (9th Cir. 2012) (internal quotation marks omitted) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). Here, Headhunter alleges it owns the exclusive copyright to the motion picture *A Family Man*. (Am. Compl. ¶¶ 5-9; *see also id.* ¶ 6, Ex. A.) Headhunter also alleges that Defaulting Defendants unlawfully copied and/or distributed the same digital copy of *A Family Man*. (*Id.* ¶¶ 10, 28-34, 39.) Because Defendants did not respond to Headhunter's complaint (*see* Dkt.), the court accepts as true the allegations in Headhunter's amended complaint, *see* Fed. R. Civ. P. 8(b)(6); *TeleVideo*, 826 F.2d at 917-18. Accordingly, Headhunter has established Defaulting Defendants' liability.

   *b. Propriety of Default Judgment*

The majority of the seven *Eitel* factors favor granting default judgment against Defaulting Defendants. Headhunter may be prejudiced without the entry of default judgment because it would be left without a legal remedy. *See Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 920 (C.D. Cal. 2010) (finding that the plaintiff

would suffer prejudice where denying default judgment would leave the plaintiff without remedy). In addition, the claims Headhunter raises in its complaint are sufficient, *see TeleVideo*, 826 F.2d at 917-18; *supra* § III.B.2.a, and Defaulting Defendants did not present any evidence or argument to the contrary (*see* Dkt.). Additionally, nothing in the record indicates that Defaulting Defendants' default was due to excusable neglect; Defaulting Defendants had ample opportunity to respond between the time Headhunter served its amended complaint and filed its motions for default judgment. (*See* Dkt.) Finally, although there is a strong policy favoring decisions on the merits, Defaulting Defendants' failure to respond is an admission that Headhunter's motions and claims have merit. *See* Local Rules W.D. Wash. LCR 7(b)(2) ("[I]f a party fails to file papers in opposition to a motion, such failure may be considered by the court as an admission that the motion has merit.").

However, the court acknowledges that some of the *Eitel* factors weigh against default judgment. For one thing, a dispute concerning the material facts Headhunter alleges may arise. *See Qotd Film Inv. Ltd. v. Starr*, No. C16-0371RSL, 2016 WL 5817027, at *2 (W.D. Wash. Oct. 5, 2016) (acknowledging that a dispute concerning material facts may arise in BitTorrent infringement cases). In addition, the amount at stake is not as modest as Headhunter contends because Headhunter seeks statutory damages of at least $750.00,[5] along with $1,516.00 in attorneys' fees and between

---

[5] Title 17 U.S.C. § 504(c)(1) provides minimum statutory damages of $750.00. 15 U.S.C. § 504(c)(1). Headhunter requests "no less than" that minimum but urges the court to consider "whether an increased statutory damage award is appropriate." (Sawyer Mot. at 5.) The court addresses the damages request below. *See infra* § III.C.2.

$101.00 and $151.00 in costs for each Defaulting Defendant. (1st Lowe Decl. (Dkt. # 70) ¶¶ 10-12; 2d Lowe Decl. (Dkt. # 72) ¶¶ 9-11); 3d Lowe Decl. (Dkt. # 74) ¶¶ 10-12.) Notwithstanding those considerations, the balance of the *Eitel* factors weigh in favor of granting default judgment against Defaulting Defendants. Thus, the court grants Headhunter's motions for default judgment.

**C.    Requested Relief**

Having granted default judgment, the court next considers the appropriate relief. Headhunter seeks three categories of relief from each Defaulting Defendant: (1) permanent injunctive relief; (2) statutory damages; and (3) attorney's fees and costs. The court discusses each in turn.

1. <u>Permanent Injunction</u>

Section 502(a) of Title 17 of the United States Code allows courts to "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). As part of a default judgment, courts may also order the destruction of all copies of a work made or used in violation of a copyright owner's exclusive rights. 17 U.S.C. § 503(b). Given the nature of the BitTorrent system, and because Defaulting Defendants are liable for infringement, Defendants possess the means to continue infringing in the future. *See MAI Sys. Corp. v. Peak Comput., Inc.*, 991 F.2d 511, 520 (9th Cir. 1993) (granting a permanent injunction where "liability has been established and there is a threat of continuing violations"). Consequently, the court grants Headhunter's request for a permanent injunction against Defaulting Defendants. The court thus permanently

enjoins Defaulting Defendants from infringing Headhunter's rights in *A Family Man* and orders Defaulting Defendants to destroy all unauthorized copies of *A Family Man*. The court now considers Headhunter's request for statutory damages.

      2. <u>Statutory Damages</u>

The Copyright Act allows plaintiffs to choose between actual or statutory damages. *See* 17 U.S.C. §§ 504(b), (c)(1). The range of statutory damages allowed, with respect to any one work for which any two or more infringers are jointly and severally liable, is $750.00 to $30,000.00. *Id.* § 504(c)(1). The court may "in its discretion increase the award of statutory damages" to $150,000.00 for willful infringement. *Id.* § 504(c)(2). District courts have "wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima," and they may take into account whether "the recovery sought is proportional to the harm caused by defendant's conduct." *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1355 (9th Cir. 1984); *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1212 (W.D. Wash. 2014) (internal quotation marks omitted) (quoting *Landstar*, 725 F. Supp. 2d at 921).

Headhunter requests at least $750.00 in statutory damages from each Defaulting Defendant. (*See, e.g.*, Sawyer Mot. at 5.) In doing so, Headhunter acknowledges that judges in this District have "awarded only the minimum statutory damages in the default judgments . . . in BitTorrent cases." (*Id.*) Headhunter asks the court, however, "to reconsider whether an increased statutory damage award [of $1,500.00] is appropriate in these cases for three reasons": (1) awarding only the statutory minimum

does not "accomplish the purpose of the Copyright Act"; (2) Defaulting Defendants' failure to appear disadvantages Headhunter because it could not determine the full scope of infringement; and (3) statutory damages awards for "other single-work media infringements in this jurisdiction, as well as in BitTorrent cases in other jurisdictions, are higher than minimum statutory damages."[6] (*Id.* at 5-6.) Despite Headhunter's arguments, the court finds no reason to deviate from previous orders of this court, in which the court awarded only the statutory minimum.

The Ninth Circuit Court of Appeals recently affirmed the court in awarding "a single award of statutory damages for the infringement of the only work . . . at issue, for which the named defendants are, on the allegations in the complaint, jointly and severally liable." *LHF Prods., Inc. v. Doe 1*, --- F. App'x ----, 2018 WL 3017156, at *1 (9th Cir. June 18, 2018). Although Headhunter contends that the Ninth Circuit's decision is "limited to the facts at issue in the appeal" (Not. (Dkt. # 79) at 1), the court fails to see how the same result does not apply here given the nearly identical pleadings in the two cases, (*compare*, *e.g.*, Am. Compl. ¶¶ 39, 44, *with*) *LHF Prods.*, 2018 WL 3017156, at *1, *and LHF Prods., Inc. v. Does 1-19*, No. C17-1175RSM, Dkt. # 20 ¶¶ 34, 39 (W.D. Wash.). Because Headhunter alleges that the defendants here

---

[6] Although Headhunter asserts that Defaulting Defendants willfully infringed the copyright (*see* Sawyer Mot. at 3), Headhunter makes no substantive argument regarding willfulness (*see generally id.*). A party shows willfulness by establishing that the defendant acted "with knowledge that the defendant's conduct constitutes copyright infringement." *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 957 (9th Cir. 2001) (internal quotation marks omitted) (quoting *Columbia Pictures Television v. Krypton Broad.*, 106 F.3d 284, 293 (9th Cir. 1997)). Headhunter makes no such showing. (*See* Sawyer Mot.)

conspired to infringe the same digital copy of *A Family Man*, the court awards $750.00 for the infringement of that single copy. (*See* Am. Compl. ¶ 39 (stating that "all the infringements alleged in this lawsuit arise from the exact same unique copy of [Headhunter's] movie"); *LHF Prods.*, 2018 WL 3017156, at *1; *LHF Prods.*, 2017 WL 615197, at *3. Each of the Defaulting Defendants is jointly and severally liable for the damages award. *See LHF Prods.*, 2018 WL 3017156, at *1.

The court declines Headhunter's invitation to award higher statutory damages. Of particular importance is that Headhunter has not shown that Defaulting Defendants are responsible for the "seed" file that provided LHF's copyrighted work on the BitTorrent network or that Defaulting Defendants profited from the infringement. (*See* Am. Compl. ¶¶ 33, 39, 49.) In short, Headhunter "offers no support for the proposition that participation in federal litigation should be compelled by imposing draconian penalties that are out of proportion to the harm caused" by a defendant's actions. *Qotd Film*, 2016 WL 5817027, at *3, n.2.

### 3. Attorneys' Fees and Costs

Finally, Headhunter requests that the Court award $1,516.00 in attorneys' fees in connection with its counsel's work in this matter against each Defaulting Defendant, and costs of $141.00 against Ms. Sawyer, $101.00 against Mr. Zeliz, and $151.00 against Mr. Mechkstroth. (1st Lowe Decl. ¶ 12; 2d Lowe Decl. ¶ 11; 3d Lowe Decl. ¶ 12.) Pursuant to 17 U.S.C. § 505, the court "in its discretion may allow the recovery of full costs by or against any party," and "may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505.

In deciding whether to award attorneys' fees, courts consider several factors, including "(1) the degree of success obtained, (2) frivolousness, (3) motivation, (4) objective unreasonableness (legal and factual), and (5) the need to advance considerations of compensation and deterrence," when making attorneys' fee determinations under the Copyright Act. *Smith v. Jackson*, 84 F.3d 1213, 1221 (9th Cir. 1996) (citing *Jackson v. Axton*, 25 F.3d 884, 890 (9th Cir. 1994)). Because Headhunter has succeeded on its non-frivolous claims, and because an award would compensate Headhunter and deter potential infringers, Headhunter is entitled to attorneys' fees.

However, the court must determine whether Headhunter's fees are reasonable. Courts determine fee award amounts by first determining "the presumptive lodestar figure," which the court calculates "by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate." *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir. 1993). The court may then adjust the lodestar with reference to the factors set forth in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir. 1975).[7] The relevant *Kerr* factors here are: the time and labor required; the

---

[7] Those factors are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Id.* at 70.

novelty and difficulty of the questions; the skill requisite to perform the legal services properly; the customary fee; the amount involved and the results obtained; and awards in similar cases. *See id.* at 70. "The lodestar amount presumably reflects the novelty and complexity of the issues, the special skill and experience of counsel, the quality of representation, and the results obtained from the litigation." *Intel*, 6 F.3d at 622. Given the nature of Headhunter's counsel's tasks, the court finds that neither Headhunter's requested hourly rate nor the number of hours expended is reasonable, and accordingly adjusts downward the requested fees and costs.

### a. *The Lodestar Rate and the* Kerr *Factors*

In the Ninth Circuit, the determination of a reasonable hourly rate "is not made by reference to rates actually charged the prevailing party." *Chalmers v. City of L.A.*, 796 F.2d 1205, 1210 (9th Cir. 1986). Instead, the reasonable hourly rate is determined with reference to the prevailing rates charged by attorneys of comparable skill and experience in the relevant community. *See Blum v. Stenson*, 465 U.S. 886, 895 (1984). "Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). Courts may also consider "rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney" as "satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

Here, Headhunter's counsel requests $350.00 per hour for his work and $145.00 per hour for his legal assistant's work. (*See* 1st Lowe Decl. ¶ 10; 2d Lowe Decl. ¶ 9; 3d

Lowe Decl. ¶ 10.) In other cases in this District, the court has awarded Headhunter's counsel a rate of $350.00 and $300.00 for similar work in other BitTorrent infringement cases. *See Qotd Film*, 2016 WL 5817027, at *3-4 (reducing counsel's hourly rate to $350); *Dallas Buyers Club, LLC v. Nydam*, No. C14-1684RAJ, 2016 WL 7719874, at *5-6 (W.D. Wash. Aug. 8, 2016) (reducing counsel's hourly rate to $300.00); *LHF Prods.*, 2017 WL 615197, at *4 (reducing counsel's hourly rate to $300.00). In *Dallas Buyers Club*, for example, the court reasoned that an hourly rate of $300 was appropriate because the cases counsel litigated did not require extensive skill or experience. 2016 WL 7719847, at *6. And in litigating similar cases in this District, counsel has reused pleadings and encountered little or no opposition from the defendants. *See id.*; *LHF Prods.*, 2017 WL 615197, at *4. Although counsel provides a declaration in which another Seattle attorney states that counsel's rate of $450.00 is reasonable—thereby suggesting that $350.00 must be reasonable—the court does not find that declaration persuasive in light of the foregoing analysis. (*See, e.g.*, 1st Lowe Decl. ¶ 7, Ex. C.) Therefore, the court adopts the reasoning of the majority of other BitTorrent cases in the District involving Headhunter's counsel and reduces counsel's hourly rate to $300.00. *See LHF Prods.*, 2018 WL 3017156, at *1.

Headhunter's counsel attests that the number of hours he requests for each Defaulting Defendant reflects the "*pro rata* share of the total amount for the time spent for all named [d]efendants in the case as of the time it was worked, except for time that was worked solely for the defaulted [d]efendant." (1st Lowe Decl. ¶ 10; 2d Lowe Decl. ¶ 9; 3d Lowe Decl. ¶ 10.) Based on that *pro rata* share, counsel states that he spent 4

hours preparing the case as to each of the Defaulting Defendants and that his legal assistant spent 0.8 hours. (*Id.*) In determining the reasonableness of the hours requested, the party seeking fees "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). The court excludes hours that are not reasonably expended because they are "excessive, redundant, or otherwise unnecessary." *Id*. at 434.

The court concludes that counsel requests an unreasonable number of hours. Counsel prorates the billed hours to include only those hours attributable to its claims against each Defaulting Defendant. (1st Lowe Decl. ¶ 10; 2d Lowe Decl. ¶ 9; 3d Lowe Decl. ¶ 10.) However, the court finds that the hours spent on the tasks common to all or many of the defendants—when multiplied by the number of defendants in this case—is unreasonable. For example, counsel states that he spent 1.3 hours reviewing the claims and facts regarding copyright infringement, preparing the complaint, and drafting a motion for expedited discovery, among other things. (1st Lowe Decl. ¶ 10; 2d Lowe Decl. ¶ 9; 3d Lowe Decl. ¶ 10.) For the 15 named defendants, that amounts to 19.5 hours spent preparing a complaint that is nearly identical to other complaints filed in this District. *See LHF Prods.*, 2017 WL 615197, at *4; *see also id.* at *3 (quoting *Malibu Media, LLC v. Schelling*, 31 F. Supp. 3d 910, 912-13 (E.D. Mich. 2014) ("[T]here is nothing unique about this case against [defendant], it is quite a stretch to suggest that drafting and preparing the complaint for filing took more than an hour, or that 1.3 hours were spent on drafting a motion for default judgment.")). However, the

court acknowledges that for the tasks specific to a Defaulting Defendant, there was no similar economy of scale. Thus, the court adjusts slightly downward the number of reasonable hours counsel spent on Headhunter's case against Defaulting Defendants. Rather than 4 hours for each of those defendants, the court finds that a reasonable number of hours for counsel is 3.5 hours. The court also finds that 0.8 hours of legal assistant time is reasonable. Thus, the court awards attorneys' fees of $1,166.00 and the full requested costs for each Defaulting Defendant.

The relevant *Kerr* factors support the court's downward adjustment. In considering two *Kerr* factors—(1) the time and labor required and (2) the skill necessary to properly perform legal services—in a BitTorrent case involving Headhunter's counsel, the court noted that similar BitTorrent cases involve "something akin to 'form-pleading.'" *Qotd Film*, 2016 WL5817027, at *4; *see also Dallas Buyers Club*, 2016 WL 7719874, at *5. Thus, reducing the requested attorneys' fees was appropriate. *Qotd Film*, 2016 WL5817027, at *4. Those two factors, along with others relevant here—the novelty and difficulty of the questions and awards in similar cases—warrant the reduction stated above.

## IV. CONCLUSION

For the reasons set forth above, the court DENIES the motion for default (Dkt. # 66) without prejudice and GRANTS the motions for default judgment (Dkt. ## 69, 71, 73). Ms. Castillo has twenty-one (21) days from the entry of this order to answer Headhunter's amended complaint. The court further ORDERS that:

//

1. Defendants Krystal Sawyer, Abram Zeliz, and LeRoy Mechkstroth are hereby permanently enjoined from directly, indirectly, or contributorily infringing Headhunter's exclusive rights in the motion picture film *A Family Man*, including without limitation by using the Internet to reproduce or copy *A Family Man*, to distribute *A Family Man*, or to make *A Family Man* available for distribution to the public, except pursuant to lawful written license or with the express authority of Headhunter's;

2. To the extent any such material exists, Defendants Krystal Sawyer, Abram Zeliz, and Leroy Mechkstroth are directed to destroy all unauthorized copies of *A Family Man* in their possession or subject to their control;

3. Defendants Krystal Sawyer, Abram Zeliz, and LeRoy Mechkstroth are jointly and severally liable for statutory damages in the amount of $750;

4. Defendant Krystal Sawyer is individually liable for attorneys' fees in the amount of $1,166.00 and costs in the amount of $141.00.

5. Defendant Abram Zeliz is individually liable for attorneys' fees in the amount of $1,166.00 and costs in the amount of $101.00.

6. Defendant LeRoy Mechkstroth is individually liable for attorneys' fees in the amount of $1,166.00 and costs in the amount of $151.00.

Dated this 27th day of June, 2018.

JAMES L. ROBART
United States District Judge